HEARD, Judge
(dissenting):
I respectfully dissent from the majority ruling of the court that Putch was operating his vehicle at a reasonable rate of speed at the time of the accident..
There is no dispute that it was dark and raining and that Kings Highway consisted of two traffic lanes, one for southbound traffic and one for northbound traffic. The street was wet and slippery. Putch testified there were no cars traveling between his car and the Cunningham vehicle, and that he was driving between 25 and 30 miles per hour. When he first saw the Cunningham vehicle it was 2 or maybe 3 blocks away; that he was watching it and Cunningham slowed down instantly just as he made his left turn.
McLure testified he was riding as a passenger with Cunningham. He stated they stopped their car south of the intersection of Ockley, and as the windshield was frosted over, Cunningham asked him if he had time to make the turn. McLure rolled down the window and looked at the approaching car which was then in the curve *308 coming down Kings Highway. He advised Cunningham he had ample time. He further stated that due to the slow acceleration of the car their left turn maneuver was slow and McLure estimated Putch’s speed at SO to 60 miles per hour. He further testified that when Cunningham began making his left turn Putch was south of Albert Street and that some time after the accident he went back and measured the distance and that Albert Street was 284 paces from Ockley. It was undisputed that the Putch car hit Cunningham’s car on the right side causing it to strike an iron railing; the gas tank was knocked off and was thrown some distance from the car. The Putch car turned completely around in the street and came to rest facing north, the direction from which it came.
The majority opinion found that Putch’s auto was damaged to the extent of $2,307.-50, and that the Cunningham car was a total loss.
In Calamia v. Sebastian, La.App., 48 So. 2d 676 (1950) the court said:
“ * * * According to his own testimony and according to his statement made to the patrolman who investigated the accident, he was driving at least 25 miles per hour, and considering the fact that he struck plaintiff’s car with such violence as to push it against a telephone pole, which the patrolman testifies was a 14-inch pole, and another witness testifies was better than 10 inches in diameter, and that this substantial telephone pole was broken in two at the ground, we feel that he was probably driving considerably in excess of 25 miles per hour. Regardless, in view of the existing conditions, we do not feel that young Sebastian was proceeding with proper care and caution, even if driving at only 25 miles per hour and especially considering that he saw the approaching car as he arrived at the intersection. It must be remembered that the travel portions of these two streets are each only about 14 feet in width; that they were wet and slippery, that it was misty, raining and that visibility was very poor. Under these conditions, it was the duty of young Sebastian in driving the Nash automobile, even though traveling on the favored street, to have his car in complete control in the event that plaintiff’s car was to attempt to preempt the intersection, as he did. In other words, if young Sebastian had been traveling at a proper rate of speed, he could very easily have avoided this collision, especially in view of the fact that at the time of the actual impact, the plaintiff’s car had negotiated about two-thirds of the intersection and the impact occurred at about 6 feet from the southeast corner of the intersection. . . . ”
[48 So.2d 676, 678]
It is my opinion that due to weather conditions existing at the time of the accident, the damage done to both cars, the testimony of Putch that he saw the Cunningham car as it proceeded toward the intersection and was observing it as he approached the intersection, his failure to slow down under the existing circumstances contributed to and was a proximate cause of the accident.